(Decided 7th June, 1892.)

---

JOHN ROBERTSON *vs.* JAMES T. PARKS, MATTHEW P. HUBBARD, JOHN MAULDIN, and JAMES L. MAULDIN.

*Action for Deceit—What will Give a Right of Action in such Case—Statement of Opinion—Failure to Comply with the Law—Res judicata—Conspiracy.*

If a defendant knowingly tells a falsehood, or makes a positive representation of a fact as true, when he does not know it to be true, and has no reasonable grounds for believing in its truth, with an intent to induce and does thereby induce the plaintiff to enter into a contract or incur liability which but for such misrepresentation he would not have entered into or incurred, and the plaintiff is thereby damnified, a case of fraudulent deceit is established.

It is not necessary in all cases to show that the defendant knew at the time that the representation made by him was false in fact.    It is sufficient if the statement be made for a fraudulent purpose, and without a *bona fide* belief in its truth by the defendant, with the intention of inducing the plaintiff to do an act, and that act is done, in reliance upon the truth of the representation, which turns out to be false, to the damage of the plaintiff. In such case an action for the damage sustained can be maintained.

The representation, to be material, must be in respect to ascertainable facts as distinguished from mere matters of opinion or speculation.    A representation which merely amounts to a statement of opinion, judgment, probability or expectation, or is vague and indefinite in its nature and terms, or is merely a loose conjectural or exaggerated statement, goes for naught, though

Robertson *vs.* Parks, *et al.*

it may not be true; for a party is not justified in placing reliance on such statement or representation.

Such an indefinite or speculative representation should put the person to whom it is made upon inquiry; and if he chooses to put faith in such a statement and abstains from inquiry he can have no ground of complaint.

A representation that the stock of a corporation would pay twenty per cent. dividends, furnishes no ground for an action for misrepresentation and deceit.

In an action for misrepresentation and deceit on the part of the defendants in procuring the subscription to shares of stock in a corporation, the plaintiff offered at the trial certain prayers which proceeded on the theory, that because of non-compliance by the corporation with certain provisions of the Code (Article 23, sections 61, 62, 73, and 294) in regard to receiving property for subscriptions to stock, and the making up and recording of certain semi-annual statements of the affairs of the company, and the agreement of the corporation to pay preferred dividends on stock, the plaintiff may have been misled to his prejudice. On appeal it was HELD :

That said prayers were properly rejected, because they were not within the pleadings in the cause, and, these omissions or neglects, if they existed, formed no substantial ground of recovery in said action for misrepresentation and deceit.

Prior to the institution of said action the affairs of the corporation had been placed in the hands of a receiver, and in the course of settlement an account was stated by the auditor, distributing the surplus fund, after payment of debts among those claiming to be stockholders of the company, and distribution being made by the auditor to the present defendants in respect to their shares of stock, exceptions were taken by the plaintiff and others to such distribution, upon the specific grounds that the issue of stock to those parties was fraudulent and void, and that no distribution should be made to such stock, in prejudice of the rights of other stockholders. These exceptions were answered, and testimony was taken on both sides of the issue thus formed; and after hearing upon the facts the exceptions were overruled and the account was finally ratified. HELD :

That the plaintiff having thus raised the question as to the formation of the corporation, and the validity of the issue of the shares of stock thereof to the defendants in this case, and liti-

gated the matter in the equity proceeding, where the question was properly presented as to the right of the defendants to receive distribution to their shares from the corporate funds, and the decision being against him, he was precluded from again raising the question in this case of the validity of such shares of stock issued to the defendants.

A conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action. The damage done is the gist of the action, not the conspiracy.

When the mischief contemplated is accomplished, the party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it, and the fact of conspiracy may aggravate the wrong; but the simple act of conspiracy does not furnish a substantial ground of action.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the six following prayers:

1. That if the jury find from the evidence that the plaintiff paid the sum of $5000 to the Parks Guano Company for certain shares of stock in said company, and shall find that the said plaintiff was induced to purchase said shares of stock in said company by the false representations and statements of the defendant, or any of them, to the effect that the said shares of stock in said company were a safe and sure investment, and would pay a high rate of interest, and shall further find that such representations and statements were false and fraudulent, and known to be false and fraudulent to said defendants, and that the plaintiff relied upon these said false and fraudulent representations and statements, and was thereby induced to purchase said shares of stock, the plaintiff is entitled to recover if the jury

Robertson *vs.* Parks, *et al.*

further find that the said plaintiff suffered loss and damage by reason of said false and fraudulent representations and statements.

2. That if the jury believe from the evidence that the defendants in making sale to the plaintiff of the shares of stock in the Parks Guano Company in the declaration mentioned, represented to said plaintiff that said stock was a safe and sure investment, or that the said stock would pay high interest, or words to that effect, to induce the plaintiff to purchase said shares; and if the jury find such statement or statements were falsely and knowingly made by the defendants, or recklessly and carelessly made, and that the plaintiff acted thereupon and purchased such shares and paid for them, the plaintiff is entitled to recover for such false representation.

3. That if the defendants made any statements that were false, or made any statement so carelessly and recklessly, and which they knew or might have known to be false, with a view to induce the plaintiff to alter his condition, and thereby altering it, then such statements are a fraud in law.

4. That if the jury find a verdict for the plaintiff, then the measure of damages is the difference between the sum originally invested by the plaintiff and the amount he has received from the receiver, with interest in the discretion of the jury.

5. If the jury believe from the evidence that the defendants, who were incorporators of the company, and president, and treasurer and directors of the company, neglected to comply with the provisions of the Code, requiring them to enter upon the books of the company a detailed statement and minute schedule of the assets and liabilities in the first week of July and January of every year, that then the plaintiff is entitled to recover, provided the jury believe that if the defendants had

complied with the statute by entering upon the books of the company said statement, that said plaintiff might have been able to have discovered from said statement the true condition of the corporation at the time he purchased his stock.

6. That if the jury believe from the evidence that the defendants, as officers and directors of this company, neglected to comply with their duty under the laws of Maryland, in acknowledging and recording the agreement to pay John Mauldin preferred interest on his stock, and if they further believe that John Robertson would not have invested in the stock of the company if he had known of this agreement for preferred dividend to Mauldin, that then the plaintiff is entitled to recover.

The defendants offered the following seven prayers, and motion:

1. That as a matter of law, his Honor, Judge DENNIS, in overruling the exceptions filed by the plaintiff and others to the ratification of the auditor's report and account, passed in the *Ex parte trust estate of the Parks Guano Company,* pending in the Circuit Court of Baltimore City, and offered in evidence, determined that the Parks Guano Company was a corporation duly and legally incorporated under the laws of the State of Maryland, and that the certificates of stock therein held by the defendants were issued to them *bona fide* and for a valuable consideration, and the jury therefore, are not entitled to consider the formation of said corporation or the issue of said stock to the defendants as aforesaid, as any evidence whatever tending to prove the charges made by the plaintiff in the declaration filed in this case.

2. That there is no legally sufficient evidence in the cause to show that defendants, in the formation or incorporation of the Parks Guano Company and the issue

of certificates of stock thereof to the defendants, John Mauldin, Matthew P. Hubbard and James T. Parks, upon a valuation of their interest in the assets of Parks and Company, as mentioned in the evidence conspired together to deceive or defraud the plaintiff, as charged in the declaration in this case, and the jury are, therefore, not entitled to consider said action or proceedings on the part of the defendants as any evidence whatever tending to prove or sustain said charges.

3. That in order to entitle the plaintiff to recover in this case, the jury must find from the evidence that the defendants, with a view to induce the plaintiff to subscribe to or purchase the stock in the Parks Guano Company, made representations to him with respect to the value of their assets and extent of their business, which were false in fact when made, and that the defendants had no reasonable ground to believe the same to be substantially correct when made, and also that the same were made with the fraudulent intent to cheat and deceive the plaintiff, and that the plaintiff had not at hand the means of verifying the truth of such representations, and that in subscribing to or purchasing said stock, the plaintiff relied on such representation and would not have made such purchase except upon the faith of the same, and that in consequence thereof he was misled and injured.

4. That the plaintiff is not entitled to recover on account of any representations they may find the defendants, or either of them, may have made to the plaintiff, that the stock of the Parks Guano Company would pay as much as twenty per cent. dividend, or for any other expression of opinion concerning the future value and profitableness of the business they were carrying on, and the jury must exclude such representations as constituting a basis of recovery in this action.

5. If the jury believe from the evidence that in the year 1881, the defendants, James T. Parks and Mat-

thew P. Hubbard, formed a copartnership in the City of Baltimore, under the name of Parks and Company, for the purpose of carrying on the fertilizing business, and that thereafter James G. Floyd became a member of said firm and contributed to the capital thereof $500 for a one-third interest therein, and that thereafter said Floyd retired from said firm, and the defendant, John Mauldin, on or about the 1st of January, 1885, became a member thereof, and contributed the sum of $4,000 in cash for a one-third interest therein, and that thereafter the said firm of Parks and Company dissolved for the purpose of continuing said business under the management of a company, and to that end, on the 1st day of July, 1887, the defendants, together with Robert H. Shipley, formed a copartnership known as "The Parks Guano Company," under the General Incorporation Law of the State, for the object and purpose contained in the certificate of incorporation and the prospectus of said company offered in evidence, and that after the organization of said company and the issue of stock to the defendants, Mauldin, Hubbard and Parks, as mentioned in the evidence, the directors of said company inserted in the "Baltimore Sun," on the — day of November, 1887, the advertisement offered in evidence, soliciting subscriptions to the stock of said company and inviting an investigation of its affairs, as therein mentioned, and that the plaintiff, in response to said advertisement, and with a view of purchasing stock therein, made inquiry into the extent and development of the fertilizing business in the City of Baltimore, and also as to the financial responsibility and standing of the defendants, and thereafter visited the office of said corporation on Light street, and at his request the defendants placed at his disposal all the ledgers, books of accounts, collection books, and other records containing the transactions of said Parks and Company and the Parks Guano Company, for the

Robertson *vs.* Parks, *et al.*

purpose of making examination of the same; and shall further find that the plaintiff is an expert bookkeeper or accountant, and that he devoted two or three weeks to an examination of said books and records; and shall further find that James L. Mauldin, the former book-keeper of said Parks and Company, offered to the plaintiff any assistance or information which he might need in the examination or understanding of said books or records, and that the plaintiff declined said offer and preferred to make said examination without the assistance of the defendants; and shall further find that after finishing the examination of said books and records the plaintiff subscribed to fifty shares of the stock of said company; and shall further find that said books and records showed the assets and liabilities of said Parks and Company, and also what part of said assets consisted of open accounts and bills receivable, overdue, and placed in the hands of attorneys or collection agents for collection, then the plaintiff is not entitled to recover in this action with respect to any representations made by the defendants, or any of them, as to the character, consideration, or value of said assets, accounts, or bills so overdue and in course of collection as aforesaid.

6. That fraud is odious in contemplation of law, and not to be presumed, and the burthen of proof is on the plaintiff to overcome such legal presumption by evidence satisfactory to the jury.

7. That if the jury find from the evidence that the defendants acted in their dealing with the plaintiff openly and in good faith, and the plaintiff purchased fifty shares of stock in the Parks Guano Company, a corporation in which the defendants were officers; and further find that loss and damage resulted to the plaintiff by reason of said purchase of stock, the plaintiff cannot recover in this suit even should the jury believe from the evidence that said loss and damage was the

direct result of the subsequent management of said corporation by the defendants.

The defendants moved the Court to strike out from the consideration of the jury all evidence offered by plaintiff as to the formation and incorporation of the Parks Guano Company, and the issue of stock therein to John Mauldin, James T. Parks and Matthew P. Hubbard, for the purpose of showing that said comany was not duly incorporated and for a lawful purpose, and that said stock so issued was not issued *bona fide* and for a valuable consideration.

The Court (PHELPS, J.) granted the plaintiff's first, third and fourth prayers, (the first prayer being granted in connection with the defendants' third prayer,) and rejected his second, fifth and sixth prayers; and granted all the prayers, and the motion of the defendants. The plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, BRYAN, FOWLER, and McSHERRY, J.

*Alexander Preston*, and *John F. Preston*, for the appellant.

*J. W. Bryant*, and *Benjamin Kurtz*, for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

This is an action for alleged deceit in the sale of certain shares of stock in a fertilizer company, in the City of Baltimore. The action was brought by the present appellant against the defendants, who were stockholders and officers managing the affairs of the corporation that issued the shares that were sold to the plaintiff.

The declaration contains two counts. The first alleges that the defendants, being desirous of obtaining addi-

Robertson *vs.* Parks, *et al.*

tional capital, caused an advertisement to be published in the Baltimore Sun newspaper, in these terms: "*Business Opportunities.* A larger capital being required to meet the demands *arising from an increase of business,* a limited number of shares are offered for sale by *a prosperous and well established fertilizer company.* Any one wishing to make a *safe and profitable investment,* is requested to investigate; address Manufacturer, 379 Sun Office." And that the plaintiff, being desirous of investing money in a safe and profitable business, and acting upon the advertisement so published, had communication with the defendants in regard to the subject-matter of the same; and that the said defendants, being stockholders and interested in the company, "represented the business to be a most flourishing and profitable one, and stated that the investment of $5,000 would yield the plaintiff 20 per cent. income on his investment, and offered to permit the plaintiff to inspect their books to verify their representations." That the plaintiff did undertake the examination of the books, to see for himself the true condition of the concern; but that he has since discovered that said books were misleading, in the manner in which they were kept, and that they did not show the true condition of the affairs of the concern; that all the books were not shown to the plaintiff, but that books were withheld from him which would have revealed the true condition of affairs, and enabled him to have guarded against the fraud and deception of the defendants; but, believing in the representations made by the defendants, and being misled by the books shown him, he invested $5,000 in the stock of said fertilizer company; and being subsequently employed as clerk to the company, and as such clerk having access to the books of the company, he discovered that he had been misinformed, and deceived by the false representations of the defendants, who well knew, at the time that such

representations were made, that they were false. And that, by reason of such fraud, misrepresentation and deceit, the plaintiff has been greatly wronged and injured.

The second count alleges that the defendants *unlawfully conspired and combined together to induce the plaintiff* to invest $5,000 in the stock of the Parks Guano Company, and that, in pursuance of such purpose, the defendants represented to the plaintiff that the company had a large and prosperous business, and that it was a safe and sure investment; whereas, such representations were, at the time made, false in fact, and were wilfully and fraudulently made to deceive the plaintiff, and whereby he was deceived and induced to invest $5,000 in the stock of the company, to his loss and injury.

The defendants pleaded not guilty, and also pleas of *res adjudicata* in respect to the stock issued to the defendants, and other things tried and determined in an equity proceeding specially referred to.

It appears from the record that, prior to July 1st, 1887, there had existed in the City of Baltimore a copartnership formed for conducting the guano and fertilizer business, under the firm name of Parks and Company. At the time of the dissolution of this partnership it was composed of James T. Parks, John Mauldin and Matthew P. Hubbard, three of the defendants in this case. About July 1st, 1887, the members of the firm, for the purpose, as stated by them, of increasing the capital and enlarging the business, determined to convert the partnership into a joint stock corporation, with a capital of $100,000, to be divided into one thousand shares of $100 each. The corporation was formed under the provisions of the general incorporation law of the State, by the name of the Parks Guano Company, and was organized about the 1st of July, 1887. Of the capital stock two hundred and fifty shares were subscribed for,

amounting, according to the par value of the shares, to $25,000. Parks, Mauldin and Hubbard, the members of the partnership of Parks & Co., each subscribed for fifty shares. The assets of the partnership of Parks & Co. were estimated and appraised, and turned over to the corporation, and on account of which three several certificates, as for paid up shares, were issued for fifty shares each, one to Parks, Mauldin and Hubbard each, in payment for their respective interests in the partnership assets transferred to the corporation. The corporation proceeded in its operations, but desiring more capital than had been subscribed, the advertisement of the 4th of November, 1887, set out in the declaration, was inserted in the Baltimore Sun. After that the plaintiff applied for information, as to the condition and business prospects of the concern; and after making examination of the books of the company, the plaintiff himself being an expert bookkeeper and accountant, he took fifty shares of the stock—a part in December, 1887, and the remainder in January, 1888—and paid the full par value therefor. Immediately upon becoming a stockholder he became an employé of the company, and remained such until its dissolution in May, 1889. Upon the dissolution of the company, the plaintiff agreed to become its liquidator, and was duly appointed to that position, at a salary of $900 *per annum.* As such liquidator, he collected about $20,000 of the assets of the corporation, and paid out, in discharge of its debts, about $16,000, leaving a surplus for distribution among the stockholders of near or about $4,000.

At this juncture of proceeding, the plaintiff filed a petition on the 11th of January, 1890, in the Circuit Court of Baltimore City, praying that Court to take jurisdiction of the trust, and to administer the same, and to direct distribution of the funds to those entitled thereto. In this petition there was no charge that the

shares of stock held by the defendants had been issued fraudulently. The Court, according to the prayer of the petition, assumed jurisdiction of the trust. This petition of the plaintiff seems to have given rise to contest. Soon thereafter a petition, on behalf of the stockholders, was filed for the appointment of a receiver, and a receiver was accordingly appointed. In the course of settlement, an account was stated by the auditor, distributing the surplus fund, after payment of debts, among those claiming to be stockholders of the company; and distribution being made by the auditor to Parks, Mauldin and Hubbard, in respect to their shares of stock, exceptions were taken by the plaintiff and others to such distributions, upon the specific ground that the issue of stock to those parties was fraudulent and void, and that no distribution should be made to such stock, in prejudice of the rights of other stockholders. These exceptions were answered, and testimony was taken on both sides of the issue thus formed; and after hearing upon the facts, the exceptions were overruled, and the account was finally ratified. These facts are all shown by the record in the equity proceedings, produced as evidence in this cause.

On the trial below there was a good deal of testimony produced, and much of it of a very conflicting character, as to the representations that were made by the defendants to the plaintiff, in regard to the affairs and amount of available assets of the company, and its business prospects, and in regard to the extent of the disclosures made to the plaintiff in the course of his examination into the affairs of the company previous to his subscription for stock.

Both sides asked for instructions to the jury; and the jury were instructed by the Court, by granting some of the prayers offered by the plaintiff, and all those offered by the defendants. And, upon examination of the

prayers granted, it appears that the whole case was amply embraced by the instructions given, and that the plaintiff obtained the full benefit of all the law to which he was entitled to have applied to his case. The verdict and judgment being against him he has appealed.

The general principles upon which actions for deceit or fraudulent misrepresentations are maintainable have been very clearly stated by this Court in the cases of *McAleer vs. Horsey*, 35 *Md.*, 439, and *Buschman and Cook vs. Codd*, 52 *Md.*, 202. If a defendant knowingly tells a falsehood, or makes a positive representation of a fact as true, when he does not know it to be true, and has no reasonable grounds for believing in its truth, with an intent to induce, and does thereby induce the plaintiff to enter into a contract or incur liability, which, but for such misrepresentation, he would not have entered into or incurred, and the plaintiff is thereby damnified, a case of fraudulent deceit is established. It is not necessary in all cases to show that the defendant *knew* at the time that the representation made by him was false in fact. It is sufficient if the statement be made for a fraudulent purpose and without a *bona fide* belief in its truth by the defendant, with the intention of inducing the plaintiff to do an act, and that act is done, in reliance upon the truth of the representation, which turns out to be false, to the damage of the plaintiff. In such case an action for the damage sustained may be maintained. This was expressly decided in the case of *Taylor vs. Ashton*, 11 *Mees. & W.*, 401, and which has been repeated in many subsequent cases. That was an action brought against the defendants, who were directors of a bank, for false and fraudulent representations alleged to have been made by them in a report which was published, stating in substance the flourishing state of the affairs of the bank. It was alleged by the plaintiff that the report was published by the defendants

fraudulently, with the view to induce persons to buy shares; that the plaintiff bought shares upon the faith of the report, and that the statements contained therein were untrue to the knowledge of the defendants, and that the plaintiff had suffered damage thereby. Upon the facts of the case, after full discussion and careful consideration, it was held, that if a party makes an *untrue* representation to another for a *fraudulent purpose,* with the intent to induce the latter to do an act which he afterwards does to his prejudice, an action for deceit will lie; and that it is not necessary to show that the defendant *knew* the representation to be *untrue* in point of fact. It is only necessary to show that the defendant pretended to a knowledge which he must, according to principles of reason and good faith, have known that he did not possess at the time of the misrepresentation made. This principle was very clearly stated, and acted on, by this Court, in the case of *Joice vs. Taylor*, 6 *Gill & John.*, 54, though not in an action for deceit. The instructions given in this case, by granting the first and third prayers of the plaintiff, and the third prayer of the defendants, when considered together, as it was proper to do, would seem to embrace the whole law of the case.

The belief of the defendants must have been in the truth of the representations as made by them, and that was a question of fact for the jury. But the representations to be material, must have been in respect of ascertainable facts, as distinguished from mere matters of opinion or speculation. A representation which merely amounts to a statement of opinion, judgment, probability or expectation, or is vague and indefinite in its nature and terms, or is merely a loose, conjectural, or exaggerated statement, goes for naught, though it may not be true; for a party is not justified in placing reliance on such statement or representation. Such an

indefinite or speculative representation should put the person to whom it is made upon inquiry; and if he chooses to put faith in such a statement, and abstains from inquiry, he can have no ground of complaint. *Buschman and Cook vs. Codd,* 52 *Md.*, 202, and the cases there cited; *Kerr on Fraud and Mistake,* 82; *Cooley on Torts,* 483, 485.

The first prayer for instruction, offered by the plaintiff, was granted; but it was granted in connection with the third prayer of the defendants. The second prayer of the plaintiff was rejected; but his third prayer was granted, and in the latter prayer he was given the benefit substantially of the proposition presented by the second prayer. He therefore had no ground of complaint because of the rejection of the second prayer as presented.

The plaintiff's fourth prayer, in regard to the measure of damages, was granted; but his fifth and sixth prayers were rejected, and very properly so. They were properly rejected, if for no other reason, that they were not within the pleadings in this cause, and presented no substantive ground for recovery in this action. They proceeded upon the theory that because of the non-compliance by the corporation with certain provisions of the Code (Art. 23. secs. 61, 62, 73, 294,) in regard to receiving property for subscriptions to stock, and the making up and recording of certain semi-annual statements of the affairs of the company, and the agreement of the corporation to pay preferred dividends on stock, the plaintiff may have been misled to his prejudice. But clearly these omissions or neglects, if they existed, formed no substantive ground of recovery in this action for misrepresentation and deceit.

There was no error committed by the Court in granting the first prayer of the defendants. The questions as to the formation of the corporation, and the validity of the issue of the shares of stock thereof to the defend-

ants in this case, were distinctly raised by the exceptions of the plaintiff to the distributions made by the auditor to such shareholders, in the equity proceedings given in evidence; and the Court, by its rulings on those exceptions, overruling them and ratifying the auditor's distribution of the corporate fund, distinctly affirmed the legal existence of the corporation, and the validity of the shares of stock issued to the defendants, at least as among the shareholders. The plaintiff having thus raised the question, and litigated the matter in the equity proceeding, where the question was properly presented, as to the right of the defendants to receive distribution to their shares from the corporate funds, and the decision being against him, the well established principles of law preclude him from again raising the question in this case, of the validity of such shares of stock issued to the defendants. *Beall vs. Pearre,* 12 *Md.,* 550, 566. And for the same reason that the Court was required to grant the first prayer of the defendants, it was required to grant the motion of the defendants to strike out the evidence offered by the plaintiff to show the fraudulent organization of the corporation of the Parks Guano Company, and the issue of the shares of stock therein to the defendants.

The defendants' second prayer was granted, but in that we perceive no error. By that prayer, the jury were instructed that there was no legally sufficient evidence to show that the defendants, in the formation of the corporation, and the issue of certificates of stock to the defendants, *conspired together to deceive or defraud the plaintiff,* as alleged in the declaration, and that the jury, therefore, were not at liberty to consider such question in arriving at their conclusion as to the liability of the defendants. There is a total absence of any legally sufficient evidence to establish a conspiracy in the issue of the stock of the corporation to the defend-

Robertson *vs.* Parks, *et al.*

ants, as against the plaintiff. Moreover, it is a general rule, that a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action. The damage done is the gist of the action, not the conspiracy. When the mischief contemplated is accomplished, the conspiracy becomes important, as it may affect the means and measure of redress.· The party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it; and the fact of conspiracy may aggravate the wrong; but the simple act of conspiracy does not furnish a substantive ground of action. *Kimball vs. Harman*, 34 *Md.*, 407; *Cotterell vs. Jones*, 11 *C. B.*, 713; *Cooley on Torts*, 125.

The third prayer of the defendants was granted in connection with the plaintiff's first prayer; and in this we perceive no ground of objection. Upon the facts of the case, and the principles of law that we have stated, this third prayer of the defendants would seem to be entirely correct as an independent proposition; and if good as an independent proposition, it is not easy to perceive why it should be made bad by being coupled with the first prayer of the plaintiff, which was granted.

The fourth prayer of the defendants, we think, was also properly granted. By that prayer the jury were instructed that the plaintiff was not entitled to recover on account of any representation made by the defendants to the plaintiff that the stock of the company would pay as much as twenty per cent. dividend, or for any other expression of opinion concerning the future value or profit of the business to be carried on; and that such representations should be excluded by the jury as a basis of recovery. This, on the principles that we have already stated, and upon the authority of well decided cases, was a proper instruction. *Gordon vs. Butler*, 105 *U. S.*, 553, 556–7.

The fifth, sixth and seventh prayers of the defendants were granted, and we do not understand that their correctness is seriously contested. They are plainly correct, and the Court committed no error in granting them.

Upon the whole case, we think the jury were fully and fairly instructed as to all the principles of law applicable to the case, and that the judgment of the Court below should be affirmed.

*Judgment affirmed.*

(Decided 7th June, 1892.)