**Robert WATERHOUSE Plaintiff**

v.

**R.J. REYNOLDS TOBACCO COMPA-
NY, Brown & Williamson Tobacco
Corporation, and British American
Tobacco Industries, PLC Defendants**

**No. CIV.PJM 02–2446.**

United States District Court,
D. Maryland.

June 3, 2003.

George A.C. Harper, Esquire, Upper Marlboro, MD, for Plaintiff.

Blaney Harper, Esquire, Paul R. Reichert, Esquire, Peter J. Biersteker, Esquire, Washington, DC, George A. Nilson, Esquire, George F. Ritchie, IV, Esquire, Baltimore, MD, Mark W. Carmean, Esquire, Chesapeake Beach, MD, Paul Joseph Day, Esquire, Baltimore, MD, for Defendants.

## OPINION

MESSITTE, District Judge.

### I.

Robert Waterhouse has sued R.J. Reynolds Tobacco Company and Brown & Williamson Tobacco Corporation, cigarette manufacturers, for injuries he allegedly sustained in using their products.[1] The suit proceeds in several counts: Count I (Negligence), Count II (Strict Liability), Count III (False Representation), Count IV (Deceit/Fraudulent Concealment), Count V (Civil Conspiracy), Count VI (Breach of Express Warranty), Count IX (there are no Counts VII and VIII) (False and Misleading Advertising) and Count X (Punitive Damages). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants have filed a Motion to Dismiss in whole or part all but Counts II (Strict Liability) and III (False Representation).

Waterhouse concedes that Count VI (Breach of Express Warranty), Count IX (False and Misleading Advertising), Count X (Punitive Damages), and his prayers for equitable relief must be dismissed. Accordingly, those Counts will be DISMISSED by consent. Otherwise, the Court will GRANT Defendants' Motion in part and DENY it in part.

### II.

Waterhouse began smoking in approximately 1947 at age 17. He claims in his suit that Defendants or their predecessors in interest induced him to smoke through a continuing campaign of advertisements, informational communications and other promotional items. On or about June 24, 1999, Waterhouse was diagnosed with lung cancer, a condition he attributes directly to his smoking.

Waterhouse contends that for a long time Defendants knew about tobacco's addictive qualities and the likelihood that it would cause cancer and that, in fact, they exploited that knowledge, all the while failing to disclose it in one form or another to the general public. Indeed, he alleges that Defendants took steps to manipulate the nicotine content of cigarettes in an effort to intensify the addiction to smoking, which resulted in serious illness to him and others. He suggests that, had he known the true facts concerning the magnitude of the health risks involved in smoking, he never would have started, but by the time he became aware of such risks, he had already become addicted.

Defendants urge the Court to grant their Motion to Dismiss for a number of reasons: first, because Waterhouse's claims of negligence, fraudulent concealment and conspiracy claims based on facts that arise after July 1, 1969 are preempted by the Federal Cigarette Labeling and Advertising Act (the Labeling Act), as amended, 15 U.S.C. § 1331, *et. seq.;* second, because Waterhouse cannot state a claim for deceit/fraudulent concealment either before or after 1969 since Defendants owed him no duty of disclosure; and third, because Waterhouse's civil conspiracy claim, to the extent that it alleges a conspiracy to fraudulently conceal the dangers of smoking, fails because (a) his underlying fraudulent concealment claim is preempted

---

1. The case originated in the Circuit Court for Prince George's County and was removed to this Court by Defendants. By order dated October 21, 2002, the Court dismissed British American Tobacco Industries, PLC, another named Defendant, for want of service.

after 1969 and (b) Defendants at no time owed Waterhouse a duty to disclose the information they allegedly concealed. The Court addresses these arguments.

### III.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint will be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court is obliged to accept the plaintiff's allegations as true, construing them in the light most favorable to him. *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992), *cert. denied*, 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993). Whether a complaint states a valid cause of action is a question of law. *Vaughns v. Bd. of Educ.*, 574 F.Supp. 1280, 1288 (D.Md. 1983), *aff'd in part, rev'd in part*, 758 F.2d 983 (4th Cir.1985).

### IV.

In 1966, Congress enacted the Labeling Act, which required manufacturers to place specified health warnings on cigarette packages. Since July 1, 1969, the statute has contained a provision that bars all state law claims premised upon a duty to provide additional or different warnings and information about smoking and health other than what Congress has statutorily prescribed.[2] The provision reads,

(a) No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

(b) No requirement or prohibition based on smoking and health shall be imposed under state law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334.

The purpose of the warning requirement was two-fold: (1) to ensure that "the public may be adequately informed" about the adverse health effects of smoking; and (2) to protect the national economy from the burdens imposed by "diverse, non-uniform and confusing cigarette labeling and advertising regulations." 15 U.S.C. § 1331(1) and (2); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 514, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

In *Cipollone*, the Supreme Court held that the Labeling Act expressly preempts certain state common law damages claims that "require a showing that … post–1969 advertising or promotions should have included additional, or more clearly stated,

---

**2.** From 1966 to 1970, the Labeling Act required cigarette packages to carry the following warning: "CAUTION: CIGARETTE SMOKING MAY BE HAZARDOUS TO YOUR HEALTH." Pub.L. No. 89–92, § 4, 79 Stat. 282, 283 (1965). Between 1970 and 1985, cigarette packages had to display the statement: "WARNING: THE SURGEON GENERAL HAS DETERMINED THAT CIGARETTE SMOKING IS DANGEROUS TO YOUR HEALTH." Public Health Cigarette Smoking Act of 1969, Pub.L. No. 91–222, § 4, 84 Stat. 87, 88 (1970). Since 1985, federal law has required cigarette packages to contain one of four rotating warnings: (a) "SUR-GEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, and May Complicate Pregnancy," (b) "SURGEON GENERAL'S WARNING: "Quitting Smoking Now Greatly Reduces Serious Risks to Your Health," (c) "SURGEON GENERAL'S WARNING: Smoking by Pregnant Women May Result in Fetal Injury, Premature Birth, and Low Birth Weight;" and (d) "SURGEON GENERAL'S WARNING: Cigarette Smoking Contains Carbon Monoxide." Comprehensive Smoking Education Act, Pub.L. No. 98–474, § 4(a), 98 Stat. 2200, 2201 (1985).

warnings." 505 U.S. at 522–24, 112 S.Ct. 2608. The Court determined that a claim is preempted if "the legal duty that is the predicate of the common-law damages action constitutes a requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion." 505 U.S. at 523–24, 112 S.Ct. 2608. *Cipollone* also indicated that the Labeling Act preempts any claim that challenges cigarette manufacturers' attempts to neutralize the effect of congressionally-mandated warnings through advertising and promotional activities, *i.e.* any claims that would premise liability on manufacturers' statements to the public in advertising or other means disputing the fact that cigarette smoking is harmful to health in an attempt to water down or contradict the language in the warning labels. *Id.* at 527–29, 112 S.Ct. 2608.

Defendants' first argument, therefore, is that Waterhouse's post-July 1, 1969 claims of negligence, fraudulent concealment and conspiracy, are preempted by federal law.

### A.

The Court begins with the negligence count.[3]

Insofar as Defendants refer to negligence claims based on failure-to-warn as opposed to negligent design, the Court agrees that any claims post-July 1, 1969 are preempted. Insofar as the negligence counts allege defective design, whether before or after 1969, the Court finds such claims may proceed.

■ As Defendants point out, the majority of the allegations in the negligence count refer to Defendants' failure to warn Waterhouse and the public of the health risks associated with smoking. The Complaint, for example, alleges that Defendants owed smokers a duty to warn of the

developing knowledge of the risks posed by cigarettes, a duty to disclose the results of their scientific research and a duty not to allege—without proper scientific study—that cigarettes are helpful or harmless. Such failure-to-warn allegations are quintessentially claims preempted by the Labeling Act. *See, e.g., Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 171 (5th Cir.1996) (preempting claims of failure to warn and fraudulent concealment based on theory that "defendants discovered the health risks [of smoking] through their research, and fraudulently concealed that information from the public"); *Estate of White v. R.J. Reynolds Tobacco Co.,* No. S–97–4301, slip op. at 3 (D.Md. April 30, 1998) (*White I*) (holding negligence claim based on failure to warn and to disclose results of scientific research preempted by Labeling Act); *Lacey v. Lorillard Tobacco Co.,* 956 F.Supp. 956, 962 (N.D.Ala.1997) (holding common law claim that defendants failed to provide list of cigarette ingredients preempted because such claim necessarily challenged adequacy of warning label); *Griesenbeck v. American Tobacco Co.,* 897 F.Supp. 815, 824 (D.N.J. 1995) (finding strict liability claim based on failure to warn of dangers of self-immolation preempted because liability would impose duty to warn of dangers other than those defined in Labeling Act); *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 439–40 (Tex.1997) (determining post–1969 common law strict liability, negligence and fraudulent concealment claims, as well as statutory deceptive trade practices claim, preempted "because they ... are premised on [defendant's] failure to disclose information regarding the dangers of cigarettes").

But Waterhouse argues that, to the extent that some of his post–1969 failure-to-warn negligence claims are not based on

---

3. Defendants have not moved to dismiss any negligence claim pre-dating July 1, 1969.

advertising and promotional activities relating to smoking and health, they survive preemption. For instance, he refers variously in his Complaint to "advocacy statements" and "informational literature" produced by Defendants which he characterizes as non-promotional. However, Waterhouse cites no authority in support of this proposition whereas Defendants offer authority to the contrary. *See, e.g., Sonnenreich v. Philip Morris, Inc.,* 929 F.Supp. 416, 419 (S.D.Fla.1996) (holding claims based on tobacco company's failure to conduct lobbying or seminars or to develop public service announcements preempted because such claims "are all undertaken with the effect of promoting and fostering a product or an ideology"). *See also Johnson v. Brown & Williamson Tobacco Corp.,* 122 F.Supp.2d 194, 201 (D.Mass.2000) (holding any communication from cigarette manufacturer to public constitutes "advertising or promotion" under Labeling Act); *Lacey,* 956 F.Supp. at 962 ("[A] claim that defendants have a duty to disclose additional information concerning cigarette ingredients unavoidably attacks defendants' advertising and promotion" and is "inextricably related to smoking and health."). The Court finds *Sonnenreich* persuasive and adopts its rationale here.

■ Waterhouse also argues that certain of Defendants' "advocacy pieces" over the years, including after 1969, lacked the federally-required health warnings such that causes of action based on those "advocate pieces" are not preempted. Waterhouse appends thirteen such pieces to his Answer to Defendants' Motion to Dismiss. Apart from the fact that Waterhouse has inappropriately relied on evidence outside the four corners of his Complaint, *see Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1472 (4th Cir.1991), Defendants again adduce authority in support of their position while Waterhouse offers none. They point out that the La-

beling Act, as amended by the Public Health Cigarette Smoking Act of 1969, Pub.L. No. 91–222, 84 Stat. 87 (1970), required only that warning labels be placed on cigarette "packages," imposing no labeling obligation with respect to advertisements or promotional materials. *See Cipollone,* 505 U.S. at 515, 112 S.Ct. 2608. Defendants point out, and *Cipollone* confirms, that only in 1972 did the Federal Trade Commission extend the warning label requirement to print advertisements for cigarettes. *Id. See also In re Lorillard,* 80 F.T.C. 455 (1972). For these reasons, the Court finds Waterhouse's argument regarding the absence of health warnings on the so-called "advocacy pieces" unpersuasive. He may not proceed with any post-July 1, 1969 negligence claim based on failure-to-warn.

■ In contrast, although Defendants concede that Waterhouse alleges defective design as well as negligent failure to warn, at various points they appear to ask the Court to sweep away all of Waterhouse's post–1969 negligence claims. Defendants, however, provide neither argument nor authority as to why the negligent design claim should not go forward. That a defective-design claim as opposed to a failure-to-warn claim is viable was suggested by Judge Smalkin of this Court in *Estate of White v. R.J. Reynolds Tobacco Co.,* 109 F.Supp.2d 424, 433–34 (D.Md.2000) (*White II*). There, summary judgment was granted in favor of the defendants but not because plaintiff had failed to state a claim. Instead, following discovery, plaintiff had failed to prove that an alternative feasible design existed at the time of the alleged defect or that the defective design of the cigarettes was the proximate cause of plaintiff's injuries. *Id.* at 434. *See also Cipollone,* 505 U.S. at 523, 112 S.Ct. 2608 ("[A]s respondents concede, §§ 5(b) [of the Labeling Act] does not generally pre-empt

'statelaw obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes.'"). Whether Waterhouse will ultimately be able to sustain his allegation of design defect remains to be seen. For the present, the Court finds no basis for the Court to halt the proceeding as to that claim.

Accordingly, Defendants' Motion to Dismiss Count I will be GRANTED IN PART and DENIED IN PART.

### B.

Waterhouse has styled Count IV as an action in "Deceit/Fraudulent Concealment." Defendants argue that the Labeling Act preempts any allegation of fraudulent concealment after July 1, 1969, because such a claim is necessarily premised on a common law duty to disclose additional facts that would have adequately warned Waterhouse and the public about the health risks of cigarette smoking. But Defendants do not stop there. Because Waterhouse is unable to allege that Defendants owed him a duty of disclosure, they say, no claim of fraudulent concealment lies for any period, pre- or post–1969.[4]

■ Defendants are correct that to the extent that a fraudulent concealment claim is based on a supposed failure to disclose relevant information through advertising and promotion, the claim is preempted by the Labeling Act. *See White II*, 109 F.Supp.2d at 430 n. 8 ("To the extent plaintiffs' fraudulent omission claim is based on post-June 1969 omissions, it is preempted by the [Labeling] Act."); *see also Allgood*, 80 F.3d at 171 (preempting fraudulent concealment claim based on theory that "defendants discovered the health risks of tobacco through their research, and fraudulently concealed that information from the public"); *Perez v. Brown & Williamson Tobacco Corp.*, 967 F.Supp. 920, 928 (S.D.Tex.1997) (holding plaintiffs' claim that defendants "concealed information about the harmful and addictive nature of tobacco use and/or nicotine" preempted by Labeling Act); *Cantley v. Lorillard Tobacco Co.*, 681 So.2d 1057, 1059 (Ala.1996) (finding plaintiffs' claims for fraudulent suppression of health risks of smoking "inevitably based" upon state law duty to disclose facts through advertising and promotion and "clearly" preempted by Labeling Act). The fact that Waterhouse's claim is labeled "fraudulent concealment" rather than failure to warn makes no difference: "If a plaintiff could assert a duty inconsistent with the Labeling Act merely by styling it 'fraudulent suppression,' the preemption provision of the Labeling Act would be deprived of any meaningful application." *Durkin v. Philip Morris Tobacco Corp.*, No. 3–CV–97–0887, 1998 U.S. Dist. LEXIS 21562, at *9–10 (M.D.Pa. Feb. 17, 1998) (granting motion to dismiss); *see also Lacey*, 956 F.Supp. at 963 (same).

In the present case, it is clear that Waterhouse's claim for fraudulent concealment is in large part nothing more than a failure-to-warn claim in different dress. Thus, at paragraph 63 of the Complaint, he

---

4. It helps to sort out what Waterhouse is alleging (or attempting to allege) in Count IV. Though he speaks at length of non-disclosure and concealment on Defendants' part, he also speaks—just as he does in Count III—of their "misrepresentations" and "false statements." To the extent that he does so, Count IV obviously duplicates Count III and may be ignored. Accordingly, for purposes of considering whether Count IV states a separate viable claim, the Court will treat Count IV as though it deals only with allegations of nondisclosure and concealment. However, as the Court will explain momentarily, Waterhouse's allegations of "misrepresentations" and "false statements" in Count IV are what ultimately salvage his civil conspiracy claim in Count V.

suggests that Defendants intentionally carried out a campaign of concealment of material information (as well as "fraud, false statements and misrepresentations") in four ways: first, they agreed to falsely represent that they would answer questions about smoking and health from a new, unbiased and trustworthy source; second, they intentionally misrepresented, suppressed and confused facts about the dangers of smoking, including addiction; third, they intentionally used lawyers to misdirect objective scientific research in order to create favorable findings regarding the health consequences of smoking; and fourth, they discouraged meritorious lawsuits by engaging in "scorched earth" litigation tactics.

These allegations either constitute variations on the failure-to-warn theme or, as, for example, with respect to the allegation that Defendants engaged in "scorched earth tactics," constitute no basis for a claim of fraudulent concealment at all, wholly apart from the strictures of the Labeling Act. Defendants are entitled to have Waterhouse's post–1969 claims of fraudulent concealment dismissed.

■ At the same time, Defendants also correctly argue that no claim for "Deceit/Fraudulent Concealment" lies for any period prior to July 1, 1969. Judge Smalkin in *White II* summarized the law of Maryland with respect to a cigarette manufacturer's duty to disclose in connection a fraudulent concealment claim:

> A fraudulent concealment claim may be maintained only if the plaintiff suffers resulting damage, and if "there exists a separate duty of disclosure to plaintiff by defendant." *Finch v. Hughes Aircraft Company*, 57 Md.App. 190, 469 A.2d 867 (1984); *See also Morris v. Osmose Wood Preserving*, 340 Md. 519, 547 n. 12, 667 A.2d 624 (1995) ("Non-disclosure ... has never been sufficient to establish fraud, in any context, absent

some duty to disclose."). A duty to speak arises when one party is in a fiduciary or confidential relationship with the other, *see City of Rome v. Glanton*, 958 F.Supp. 1026, 1038 (E.D.Pa.1997), and at times when one party makes a "partial and fragmentary statement of fact." *Brager v. Friedenwald*, 128 Md. 8, 32, 97 A. 515 (1916). In this Court's judgment, the arms-length relationship between defendant cigarette manufacturers and White, the consumer of their products, does not create a special relationship that gives rise to a duty to speak. The fact that these manufacturers made cigarettes, as opposed to some other product, does not show that they played a fiduciary role in Mr. White's life and thus entered into a special and confidential relationship with him.

109 F.Supp.2d at 430–31.

Because Waterhouse concedes that he and Defendants "had no special relationship beyond that of purchaser and vendor," his claim for fraudulent concealment must fail regardless of the time period to which it applies.

### C.

■ Finally, Defendants argue that Waterhouse's post–1969 civil conspiracy claim must also be dismissed. Waterhouse seeks refuge in *Cipollone*, which postulated that a claim alleging a conspiracy "to misrepresent or conceal facts concerning the health hazards of smoking ... is not preempted by § 5(b) [of the Labeling Act] for it is not a prohibition based on smoking and health" as that phrase is properly construed. *Cipollone*, 505 U.S. at 530, 112 S.Ct. 2608. Defendants' argument, however, is slightly different. They contend that because conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other

tortious injury, and because Waterhouse bases his conspiracy claim on allegations of fraudulent concealment, which is dismissible in its entirety, no cause of action for conspiracy can survive. *See White II,* 109 F.Supp.2d at 428 (citing *Alexander, Inc. v. B. Dixon Evander & Assoc.,* 336, Md. 635, 645 n. 8, 650 A.2d 260, 265 n. 8 (1994) and *Robinson v. Parks,* 76 Md. 118, 135, 24 A. 411, 413 (1892)).

Defendants are correct insofar as their premise is accurate, *i.e.* to the extent that Waterhouse's conspiracy claim is based on his fraudulent concealment count. That is not, however, the end of the matter. Although Waterhouse, for some reason, seems to have bought into the argument that fraudulent concealment is the sole premise of his civil conspiracy claim, a closer look at Count IV reveals a mixture of allegations of both false representation as well as fraudulent concealment. Waterhouse's claims of false representation, principally embodied in Count III, stand unchallenged at this juncture. Presumably, to the extent that it saves his claim, Waterhouse would be equally willing to predicate his claim of civil conspiracy on Count III as opposed to Count IV. Since that is what the Court understands Waterhouse's actual intention to be,[5] the Court will GRANT the Motion to Dismiss the civil conspiracy count (Count V) insofar as it is premised on Count IV (Deceit/Fraudulent Concealment), but will DENY it insofar as it is premised or on Count III (False Representation).

### V.

Summing up, the Court will GRANT Defendants' Motion to Dismiss in part and DENY it in part as follows:

---

5. The Court reasons thus in view of the fact that Count IV contains allegations of false

1) The Motion is GRANTED IN PART and DENIED IN PART as to Count I (Negligence):

   a) It is GRANTED as to any claim of negligence based on allegations of Defendants' failure-to-warn occurring on or after July 1, 1969;

   b) It is DENIED as to any claim of negligence based on allegations of Defendants' failure-to-warn occurring on or before June 30, 1969;

   c) It is DENIED as to any claim of negligence based on design defect whether occurring before or after 1969;

2) The Motion is GRANTED as to Count IV (Fraudulent Concealment), whether occurring before or after 1969;

3) The Motion is GRANTED IN PART and DENIED IN PART as to Count V (Civil Conspiracy):

   a) It is GRANTED insofar as the claim of civil conspiracy is premised on the tort of fraudulent concealment;

   b) It is DENIED insofar as the claim of civil conspiracy is premised on the tort of fraudulent representation.

A separate Order will BE ENTERED implementing this Opinion. A Scheduling Order will promptly ISSUE.

### *ORDER*

Upon consideration of the Motion to Dismiss of Defendants R.J. Reynolds Tobacco Company and Brown & Williamson Tobacco Corporation [Paper No. 12] and Plaintiff Robert Waterhouse's Opposition thereto, it

representation.

is, for the reasons stated in the accompanying Opinion, this 3rd day of June, 2003,

ORDERED:

1) As to Count I (Negligence), Defendants' Motion to Dismiss [Paper No. 12] is GRANTED IN PART and DENIED IN PART:

   a) The Motion is GRANTED as to any claim of negligence based on allegations of Defendants' failure-to-warn occurring on or after July 1, 1969;

   b) The Motion is DENIED as to any claim of negligence based on allegations of failure-to-warn occurring on or before June 30, 1969; and

   c) The Motion is DENIED as to any claim of negligence based on design defect whether occurring before or after 1969.

2) As to Count IV (Fraudulent Concealment), whether occurring before or after 1969, Defendants' Motion to Dismiss is GRANTED;

3) As to Count V (Civil Conspiracy), Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART:

   a) The Motion is GRANTED insofar as the claim of civil conspiracy is premised on the tort of fraudulent concealment; and

   b) The Motion is DENIED insofar as the claim of civil conspiracy is premised on the tort of false representation.

4) With Plaintiff's consent, Count VI (Breach of Express Warranty), Count IX (False and Misleading Advertising), Count X (Punitive Damages) of the Complaint and all claims for equitable relief are DISMISSED WITH PREJUDICE; and

5) A separate Scheduling Order shall ISSUE.