**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1482

ROBERT WATERHOUSE,

Plaintiff - Appellant,

versus

R.J. REYNOLDS TOBACCO COMPANY; BROWN &
WILLIAMSON TOBACCO CORPORATION,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Peter J. Messitte, District Judge. (CA-
02-2446-PJM)

Argued: November 29, 2005          Decided: January 11, 2006

Before NIEMEYER, LUTTIG, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** George Aubrey Harper, Upper Marlboro, Maryland, for
Appellant. Robert H. Klonoff, JONES DAY, Washington, D.C., for
Appellees. **ON BRIEF:** Joseph G. Finnerty, Jr., George F. Ritchie,
IV, DLA PIPER RUDNICK GRAY CARY US, L.L.P., Baltimore, Maryland,
for Appellee Brown & Williamson Tobacco Corporation; Paul R.
Reichert, JONES DAY, Washington, D.C., for Appellee R. J. Reynolds
Tobacco Company.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Appellant Robert Waterhouse brought this action against Brown & Williamson Tobacco Corporation and R.J. Reynolds Tobacco Company, alleging that he developed lung cancer as a result of smoking cigarettes manufactured and sold by the defendants. The district court granted summary judgment to defendants. We affirm.

I.

The facts, recounted in the light most favorable to Waterhouse, are as follows. Waterhouse began smoking in 1947, at age 17, and smoked continuously until December 1984. He smoked Lucky Strikes and Pall Mall cigarettes until the late 1950s to early 1960s, both of which were manufactured and sold by Brown & Williamson. He then switched to Winston cigarettes, manufactured and sold by R.J. Reynolds. As noted by the district court, Waterhouse was admittedly aware that cigarette smoking was detrimental to his health. During his teenage years, a coach at his high school had warned him about smoking and his parents were opposed to his smoking. Throughout the period that he smoked, various family members, friends, and physicians encouraged him to quit for health reasons. And, he was admittedly aware of the warning labels which were placed on cigarette packs beginning in 1966. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 513-14 (1992) (discussing various warning labels mandated by the Federal

2

Cigarette Labeling and Advertising Act). However, Waterhouse did not quit smoking until December 1984, when his son showed him photographs of a smoker's lungs.

On June 24, 1999, nearly fifteen years after he quit smoking "cold turkey," Waterhouse was diagnosed with lung cancer. Two years later, he initiated this action in Maryland state court, alleging that the cancer was caused by his 37-year history of smoking the defendants' cigarettes. Defendants removed the case to federal district court based on diversity of citizenship. On June 3, 2003, the district court granted in part and denied in part defendants' Rule 12(b)(6) motion. See <u>Waterhouse v. R.J. Reynolds Tobacco Co.</u>, 270 F. Supp. 2d 678 (D. Md. 2003).

Following discovery, defendants moved for summary judgment on Waterhouse's remaining claims of pre-1969 negligence and strict liability for failure to warn.[*] Following a hearing, the district court held that defendants had presented evidence that the health risks of smoking were common knowledge during the years that Waterhouse smoked, which Waterhouse had failed to refute by

---

[*]Waterhouse's original complaint set forth claims of negligence, strict liability, false representation, deceit and fraudulent concealment, civil conspiracy, breach of express warranty, intentional false and misleading advertising, and punitive damages. On defendant's Rule 12(b)(6) motion in 2003, the district court had ruled that Waterhouse's post-July 1, 1969 negligence claim based on failure to warn was preempted by the Cigarette Labeling Act. See <u>Waterhouse</u>, 270 F. Supp. 2d at 683. Waterhouse later conceded that he could not pursue the fraudulent misrepresentation and conspiracy claims, and abandoned his design defect claims at the summary judgment stage.

3

sufficient evidence to the contrary, and that, even if a duty to warn existed, Waterhouse had failed to present sufficient evidence that a failure to warn proximately caused his injuries.  See Waterhouse v. R.J. Reynolds Tobacco Co., 368 F. Supp. 2d 432 (D. Md. 2005).

II.

We review the district court's grant of summary judgment de novo, see Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988), construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in Waterhouse's favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The standard for granting summary judgment is well settled.  Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case." Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995) (internal quotation marks omitted).  Once he has done so, the nonmoving party "may not rest upon mere allegations or denials," id. (internal

4

quotation marks omitted), but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

Under Maryland law, sellers are strictly liable for physical harm caused by a product "in a defective condition unreasonably dangerous to the user." Restatement (Second) of Torts § 402A (1965). Under the consumer expectation test, however, a product is "unreasonably dangerous" only if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id., cmt. I; see Phipps v. General Motors Corp, 363 A.2d 955, 963 (Md. 1976) (noting that Maryland has adopted the strict liability principles of § 402A of the Restatement (Second) of Torts). Similarly, a manufacturer or seller of a product cannot be held liable under a negligent failure-to-warn claim if the danger of the product was obvious to the consumer. See Mazda Motor of Am., Inc. v. Rogowski, 659 A.2d 391, 397 (Md. App. 1995) (noting that there is no duty to warn of obvious or commonly-known dangers).

In this case, defendants presented an expert opinion by Robert J. Norrell, Ph.D., a historian with the University of Tennessee. Dr. Norrell conducted research into the question of public

awareness throughout the twentieth century about the health risks of smoking. He concluded that "between 1947 and 1969 there was widespread common knowledge among ordinary people that cigarette smoking could cause serious life-threatening diseases." Waterhouse, 368 F. Supp. 2d at 436.

In response, Waterhouse offered the affidavit of Allan Feingold, M.D., a pulmonologist, who stated that "most smokers did not have a real understanding of the risk of cigarette smoking" during these years. Id. (internal quotation marks omitted). The district court, however, ruled that Dr. Feingold, in contrast to Dr. Norell, "reache[d] his conclusion without establishing what his mode of historical analysis is or whether that mode is generally considered reliable or acceptable," "failed to demonstrate his competence to offer an opinion in the matter," and, by his own admission, "ha[d] no education or experience in polling, surveying, or otherwise assembling data upon which historians or other experts base opinions regarding public awareness." Id. at 436-37. Accordingly, the court concluded that Waterhouse's evidence was insufficient.

Under the circumstances, we are constrained to agree that Waterhouse failed to offer sufficient and competent evidence to contradict the defendants' assertion that the dangers of smoking were commonly known. Waterhouse therefore failed to create a genuine issue of fact sufficient to survive summary judgment.

6

We likewise reject Waterhouse's contention that the district court erred in granting summary judgment for defendants based upon plaintiff's failure to prove that the lack of a warning prior to July 1, 1969, proximately caused his lung cancer. In order to establish a failure-to-warn claim under Maryland law, Waterhouse was required to present evidence "to prove not only that [he] would have read, understood, and remembered the warning, but also that [he] would have altered [his] conduct to avoid the injury." Eagle-Picher Indus., Inc. v. Balbos, 604 A.2d 445, 468 (Md. 1992) (internal quotation marks omitted). There is a presumption in strict liability cases that a plaintiff would have read and heeded an adequate warning if it had been given. See id. at 469. However, the presumption may be rebutted where there is "evidence that the personalities or dispositions of the [plaintiffs] were such that they clearly would have ignored warnings." Id.

In light of Waterhouse's admissions regarding his knowledge of the ill-effects of smoking cigarettes, the district court held that Waterhouse had failed to forecast sufficient evidence from which a jury could find a causal connection between any failure to warn and his subsequent development of lung cancer. On appeal, Waterhouse points to his affidavit, filed after his deposition and in response to the defendants' motion for summary judgment. In that affidavit, Waterhouse averred that he "did not learn that smoking causes lung cancer until 1965, when Nat King Cole died of lung cancer caused by

7

cigarette smoking," and that "[i]f [he] had known that cigarette smoking could cause lung cancer, [he] would have never begun smoking." J.A. 209.

The district court rejected the claim that this "late-conceived affidavit" was sufficient to create a genuine issue of material fact on the issue of causation, see Waterhouse, 368 F. Supp. 2d at 438 (holding that Waterhouse "cannot generate a genuine issue of material fact by making statements in an affidavit that directly contradict his sworn deposition testimony given in the case") (citing Rohrbough v. Wyeth Lab., Inc., 916 F.2d 970, 975 (4th Cir. 1990)), and ruled that, by Waterhouse's own admissions, the presumption that Waterhouse would have read and heeded an adequate warning if it had been given, had been rebutted.

Having reviewed the record and the district court's opinion, we find no reversible error. Because no reasonable juror could find that defendants' alleged failure to warn of the hazards of smoking proximately caused Waterhouse's lung cancer and other injuries, we affirm the grant of summary judgment on this basis as well.

## III.

For the foregoing reasons, the judgment of the district court is hereby affirmed.

<u>AFFIRMED</u>

8