**RUBIN SQUARED, INC.**, formerly known as, **Bio Science Contract Production Corp.**, Plaintiff–Appellant,

v.

**CAMBREX CORPORATION**, Defendant–Appellee.

No. 07–4063–cv.

United States Court of Appeals, Second Circuit.

March 25, 2009.

Harold M. Walter, Offit Kurman, P.A. (Steven A. Stadtmauer, Harris Beach PLLC, William S. Heyman, Tydings & Rosenberg LLP, on the brief) Maple Lawn, Maryland, for Appellant.

George S. Canellos, Milbank, Tweed, Hadley & McCloy LLP (Sander Bak, Tawfiq S. Rangwala, on the brief), New York, New York, for Appellees.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. B.D. PARKER, Circuit Judges, Hon. DENNY CHIN,* District Judge.

### SUMMARY ORDER

Plaintiff-appellant Rubin Squared, Inc. ("Rubin Squared") appeals from an August 24, 2007 Opinion and Order of the United States District Court for the Southern District of New York granting defendant-appellee Cambrex Corporation's ("Cambrex") motion for summary judgment. We assume the parties' familiarity with the underlying facts and procedural history of this case.

---

* The Honorable Denny Chin, United States District Judge for the Southern District of New York, sitting by designation.

Rubin Squared argues, *inter alia,* that the district court erred in rejecting its contention that Cambrex fraudulently induced it to sell the assets of Bio Science Contract Production Corp. ("Bio Science") through false promissory statements made during negotiations of the Asset Purchase Agreement ("APA") that formed the basis for the acquisition. Because the statements described by Rubin Squared were too vague to be actionable, or, if actionable, not actually breached or the cause of Rubin Squared's damages, we affirm.

Though Rubin Squared claims that Cambrex promised to fund a $60 million, four-suite expansion of Bio Science's facilities, Jacques Rubin ("Rubin") testified that Rubin Squared "relied on the representation that, given a proper plan, there would be expansion." He further testified that Rubin Squared understood "approval" of the expansion to mean that, "if you come back to us with an acceptable plan, we are going to commit $30 million to build this." Hence, not only did Cambrex not promise Rubin Squared that it would finance a $60 million expansion, but also it attached the condition that any expansion would be contingent upon a "proper plan." Therefore, the representations were too indefinite to warrant reliance. *See First Union Nat'l Bank v. Steele Software Sys. Corp.,* 154 Md.App. 97, 838 A.2d 404, 442 (2003) ("Representations[,] to be material, must have been in respect of ascertainable facts, as distinguished from mere matters of opinion or speculation." (citing *Robertson v. Parks,* 76 Md. 118, 24 A. 411 (1892))). Moreover, in view of the broad integration clause in the APA, the sophistication of the parties, the size of the transaction, and all the circumstances, the district court correctly held that Rubin Squared's reliance on Cambrex's purported oral representations was unreasonable as a matter of law. *See, e.g., One–O–One Enters., Inc. v. Caruso,* 848 F.2d 1283, 1286–87 (D.C.Cir.1988).

Rubin Squared also asserts that Cambrex promised that Jacques Rubin "would be entitled to run the business as he had previously with full authority over its operations." In fact, Rubin Squared does not point to a single instance where Cambrex successfully interfered with Rubin's control of Bio Science. Rubin personally rebuffed Cambrex's attempts to implement new email, inventory, billing, and purchasing systems. Further, Paul Walter, Rubin Squared's attorney, openly agreed with the district court's assessment that "[a]ll attempts" by Cambrex to alter Bio Science's operations "were rejected by Mr. Rubin." Thus, even if this alleged promise was actionable, there is no evidence that it was actually breached.

Similarly, to the extent that Cambrex promised Rubin Squared that it would not purchase a Bio Science competitor without, as Jacques Rubin described, "our approval," Rubin himself admitted in an interrogatory that "he would support management's recommendation to proceed with the Marathon Acquisition." Thus, again, Cambrex did not breach this alleged promise.

Moreover, assuming, *arguendo,* that Cambrex indeed promised Rubin Squared that Rubin would be made a Cambrex vice president after the acquisition, the district court was correct in finding that, given the limited authority of such a position, Rubin Squared could not prove that this breach, alone, "cause[d] Bio Science's collapse." *See Nails v. S & R, Inc.,* 334 Md. 398, 639 A.2d 660, 668 (1994) ("In order to recover damages in an action for fraud or deceit, a plaintiff must prove ... that the plaintiff suffered compensable injury *resulting from* the misrepresentation." (emphasis added)).

Finally, given the above analysis, we agree with the district court that Rubin

Squared has not raised a genuine issue of fact adequate to support a finding that Cambrex breached the duty of good faith implied in the APA. *See Parker v. Columbia Bank,* 91 Md.App. 346, 604 A.2d 521 (1992) (stating that, under Maryland law, the implied duty of good faith "simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his [or her] obligations under the contract").

We have considered Rubin Squared's remaining arguments and find them to be without merit.

For the foregoing reasons, the Opinion and Order of the district court is AFFIRMED.