

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-26-2004

# Jeter v. Brown Williamson

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4839

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Jeter v. Brown Williamson" (2004). *2004 Decisions.* Paper 196.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/196

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

———————

No. 03-4839

———————

IVAN JETER, ADMINISTRATOR OF THE ESTATE
OF RONALD F. SMITH, DECEASED,

<u>Appellant</u>

v.

BROWN AND WILLIAMSON TOBACCO CORPORATION;
LORILLARD, INCORPORATED

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 02-cv-00789)
District Judge: Hon. Arthur J. Schwab

———————

Argued October 7, 2004

BEFORE: SLOVITER, VAN ANTWERPEN and COWEN, <u>Circuit Judges</u>

(Filed October 26, 2004)

Kenneth W. Behrend, Esq. (Argued)
Behrend & Ernsberger
306 Fourth Avenue
Union National Bank Building, Suite 300
Pittsburgh, PA 15222

Counsel for Appellant

Frederick M. Erny, Esq.
Melissa L. Korfhage, Esq.
Dinsmore & Shohl
255 East Fifth Street
1900 Chemed Center
Cincinatti, OH 45202

Peter S. Greenberg, Esq (Argued)
Jennifer A. Diamantis, Esq.
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA 19103

Counsel for Appellee

---

OPINION

---

COWEN, Circuit Judge.

Ronald F. Smith brought this action against Brown & Williamson Tobacco Corporation ("Brown & Williamson"), alleging that Brown & Williamson had committed various common-law torts in inducing him to smoke their "Kool" brand of cigarettes. He alleged that Brown & Williamson was responsible for his contracting, and ultimately dying from, lung cancer. After Smith died, Ivan Jeter continued this action in his capacity as administrator of Smith's estate. In a December 1, 2003 order, the District Court granted summary judgment in favor of Brown & Williamson, dismissing the complaint in its entirety. Jeter now appeals from that order.

We will affirm on somewhat different grounds than given by the District Court.

I.

Smith began smoking cigarettes in approximately 1961, when he was eleven or twelve years old. In deposition testimony taken before his death, Smith testified that he began smoking because his group of friends started smoking. He testified both of his parents smoked, and that "everybody on tv did it." (AR at 99a.) He testified that he smoked Kools because that was the brand that his parents smoked, and he had seen advertisements for them. When asked specifically about the advertisements he had seen, he responded "some of them was cowboys, some of them entertainment, and that was many years ago. I don't know whether I can clearly recall that. It was back awhile." (Id. at 101a.) When questioned further, he acknowledged that he remembered advertisements involving sports figures.

Smith testified that he was aware that smoking was bad for his health, and that he tried to quit several times. He testified that his parents told him that smoking was bad for him. He initially hid the fact that he smoked from his parents, because they would have punished him if they caught him smoking. He also testified that his health class in high school taught him about the "bad effects of smoking." (Id. at 112a.) He recalled the Surgeon General's report that came out in 1964, stating that smoking could be hazardous to his health, and recalled the warnings that began to appear on cigarette packages. He stated, however, "I didn't do nothing about it. It didn't make no difference to me, I smoked them regardless of [the warning]." (Id. at 113a.)

Smith was diagnosed with lung cancer on September 21, 2000. He did not quit smoking, even after his diagnosis. He died in February 2003.

## II.

We exercise plenary review over a District Court's decision to grant summary judgment. Kemmere v. ICI Ams., 70 F.3d 281, 286 (3d Cir. 1995). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As preemption is primarily a question of law, we likewise exercise plenary review over the District Court's preemption analysis. Travitz v. Northeast Dep't. IGLWU Health & Welfare Fund, 13 F.3d 704, 708 (3d Cir. 1994).

Jeter argues on appeal that the District Court erred in finding that the Federal Cigarette Labeling and Advertising Act ("the Labeling Act"), 15 U.S.C. §§ 1331-1340 preempts his claims for negligence and strict liability based on failure to warn after 1969.[1] He argues that the Supreme Court's decision in Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992), does not dictate a finding that the Labeling Act preempts his claim for failure to warn after 1969. Jeter did not raise this argument before the District Court, however. On the contrary, he specifically argued before the District Court that his claims were not based on a post-1969 failure to warn. (AR at 203a-05a.) As such, barring exceptional

---

[1]Jeter does not challenge the District Court's decision to dismiss his claims for defective design.

circumstances not present here, he has waived this argument. See <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 799 (3d Cir. 2001).

Jeter next challenges the District Court's dismissal of his pre-1969 failure to warn claims, arguing that the 1965 version of the Labeling Act did not pre-empt state common law claims for damages. In <u>Cipollone</u>, the Supreme Court held that the 1969 version of the Labeling Act preempted certain state-law claims for damages, including claims for failure to warn. <u>Cipollone</u>, 505 U.S. at 524-25. The Supreme Court further held, however, that the 1965 version "only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements, and did not pre-empt state-law damages actions." <u>Id.</u> at 519-20.

The District Court did not rely on the express language of the Labeling Act in reaching its decision. Instead, it employed the principles of implied preemption. When Congress has explicitly defined the extent to which its enactments preempt state law, however, there is no need to address the principles of implied preemption. See <u>English v. General Elec. Co.</u>, 496 U.S. 72, 78-79 (1990); <u>Horn v. Thoratec Corp.</u>, 376 F.3d 163, 166 (3d Cir. 2004). Thus, the District Court erred in holding that the pre-1969 claims were preempted. Nonetheless, we will affirm the District Court's decision on different grounds. <u>Erie Telecomm., Inc. v. City of Erie</u>, 853 F.2d 1084, 1089 n.10 (3d Cir 1988) ("An appellate court may affirm a correct decision by a lower court on grounds different than those used by the lower court.").

5

Under Pennsylvania law, a plaintiff in a failure to warn case must establish that 1) a warning of a particular product was either lacking or inadequate, and 2) the user of the product would have avoided the risk had he been advised of it by the seller. Phillips v. A-Best Prods. Co., 665 A.2d 1167, 1171 (Pa. 1995). When the dangers of a product are or should be known to the user, liability cannot be imposed on the manufacturer for failure to warn of the danger. Sherk v. Daisy-Heddon, 450 A.2d 615, 618 (Pa. 1982). In addition, "[t]o reach a jury on a failure to warn theory of liability, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning might have prevented the injury." Pavlik v. Lane Ltd./Tobacco Exp. Int'l., 135 F.3d 876, 881 (3d Cir. 1998).

Smith testified that his parents told him that smoking was bad for him, that he learned about the bad health effects of smoking in school, that he was aware of the Surgeon General's report that smoking was hazardous, and that he had heard cigarettes referred to as "cancer sticks" when he was growing up. (AR at 111a-14a.) Smith even admitted that he had always known that smoking was bad for him, but that he started smoking despite that knowledge, because his friends were doing it. (AR at 114a.) He also testified that he paid no attention to the warnings when they did appear on cigarette packages, because he enjoyed smoking. (Id. at 113a.) In other words, Smith was aware of the risks associated with smoking, but ignored warnings from his parents, teachers, and the Surgeon General that cigarettes were hazardous to his health, because he enjoyed

6

smoking and his friends were doing it. A finding that an additional warning from Brown & Williamson would have deterred Smith from smoking would be nothing more than a guess that has no support in his actual behavior. As a matter of law, therefore, Brown & Williamson cannot be held liable for failure to warn Smith of dangers of smoking.

Jeter argues that the District Court erred in granting summary judgment as to his remaining claims, because there remains a disputed issue of material fact. He asserts that whether Smith saw and relied on any of Brown & Williamson's advertisements is in dispute.

To sustain a claim for negligent or intentional misrepresentation, a plaintiff must establish that he justifiably relied on an alleged misrepresentation. Bortz v. Noon, 729 A.2d 555, 560-62 (Pa. 1999). Similarly, a plaintiff in a breach of warranty claim must establish that an actual affirmation of fact or a promise formed the basis of the bargain between the seller and the plaintiff. Pa. C.S. § 2313; Goodman v. PPG Indus., 849 A.2d 1239, 1243 (Pa. Super. Ct. 2004). It follows that, in order for an advertisement to form the basis of the bargain, a plaintiff must have seen and relied upon the advertisement.

In his deposition testimony, Smith did not recall the specifics of any tobacco advertisements, and did not describe any as being for Kools. Jeter now introduces evidence of the advertisements Brown & Williamson ran at the time Smith began smoking, and argues that the pervasiveness of the advertisements creates an issue of material fact as to whether Smith saw these advertisements and relied upon them.

7

Although Smith did testify that none of the advertisements he saw indicated that smoking might be harmful, he did not specifically point to the Brown & Williamson ads when he stated "It was the thing; everybody would smoke. Your health, it was the right thing to do." (AR at 219a). He testified that he did not remember any specifics of any of the advertisements, because it was so long ago. (Id. at 101a.) In addition, he testified that he chose to smoke Kools because that was what his parents and friends smoked. Finally, he testified that the only direct information about health he remembers receiving from Brown & Williamson is the warning on the cigarette packages.

The mere pervasiveness of the advertisements is not sufficient to counter Smith's actual testimony. See Weinberg v. Sun Co., Inc., 77 A.2d 442, 446 (Pa. 2001) (under traditional common law elements, reliance on advertisements can only be established when the plaintiff actually saw or heard and believed the allegedly false advertisement). Jeter has presented no evidence that Smith actually saw or relied on any of Brown & Williamson's advertisements or other representations in deciding to smoke cigarettes in general and Kools in particular. Because such reliance is an essential element of Jeter's claims for false representation, breach of express warranty, negligent misrepresentation, and intentional misrepresentation, the District Court did not err in dismissing counts III, VI, VII, and VIII of Jeter's complaint.

The District Court also properly dismissed Jeter's fraudulent concealment claim. A party is liable for fraudulent concealment when he "by concealment or other action

8

intentionally prevents the other from acquiring material information." <u>Restatement</u> <u>(Second) of Torts</u> § 550. Under Pennsylvania law, a party is liable for fraudulent concealment only when it had a duty to speak in the first place. <u>Duquesne Light Co. v.</u> <u>Westinghouse Elec. Corp.</u>, 66 F.3d 604, 611-612 (3d Cir. 1995). Such duty generally arises only when there is a special relationship between the parties. <u>Id.</u> Pennsylvania courts have found, however, that liability may be imposed for failure to speak when a supplier of chattels knows those chattels are be dangerous in their intended use and fails to warn the user of the dangers.

Several cases hold that no fiduciary or confidential relationship exists between the manufacturer of cigarettes and consumers of cigarettes, which gives rise to a duty to speak or disclose information. <u>See, e.g.</u>, <u>Waterhouse v. R.J. Reynolds Tobacco Co.</u>, 270 F.Supp.2d 678, 685 (D.Md. 2003) (dismissing fraudulent concealment claim where plaintiff and cigarette manufacturer had no special relationship beyond that of purchaser and vendor); <u>White v. R.J. Reynolds Tobacco Co.</u>, 109 F.Supp.2d 424, 431 (D.Md. 2000) (stating that "the arms-length relationship between defendant cigarette manufacturers and . . . the consumer of their products, does not create a special relationship that gives rise to a duty to speak"). Because Jeter failed to establish that Brown & Williamson had a duty to speak, his fraudulent concealment claim must fail. Moreover, several cases applying a fraudulent concealment standard virtually identical to the applicable standard in this case hold that no fiduciary or confidential relationship exists.

9

Finally, because Jeter failed to assert a viable claim for any of the intentional torts in his complaint, the claim for civil conspiracy must also fail. See Fife v. Great Atlantic & Pacific Tea Co., 52 A.2d 24, 29 (Pa. 1947). As such, the District Court properly granted summary judgment in Brown & Williamson's favor on all claims.[2]

## III.

For the foregoing reasons, the judgment of the District Court entered on December 2, 2003, will be affirmed.

---

[2]The issue of causation was briefed and argued by all parties. While causation is a crucial part of any products liability action, we have found it unnecessary to address the issue in this opinion since we deem the grounds set forth above are adequate to dispose of the matter before us.

10