Mark GERRITY, Executor of the
Estate of Judith Gerrity,
Plaintiff,

v.

R.J. REYNOLDS TOBACCO CO.
and Lorillard Tobacco Co.,
Defendants.

No. CIV. 3:99CV1329JBA.

United States District Court,
D. Connecticut.

April 1, 2005.

David S. Golub, Jonathan M. Levine, Marilyn J. Ramos, Mary G. Curry, Silver, Golub & Teitell, Stamford, CT, Eliot B. Gersten, John P. Clifford, Jr., Gersten & Clifford, Hartford, CT, for Plaintiff.

Alan K. Windham, Marilyn R. Forbes, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, Chris J. Lopata, Harold K. Gordon, Mark R. Seiden, Stephen J. Kaczynski, Jones, Day, New York City, David Thomas Ryan, Frank F. Coulom, Jr., Robinson & Cole, M. Karen Noble, Michael R. McPherson, R. Cornelius Danaher, Jr., Danaher, Tedford, Lagnese & Neal, Hartford, CT, Mark A. Belasic, Jones Day, Cleveland, OH, David M. Woods, Gay Tedder, John K. Sherk, III, Thomas A. Duncan, Shook, Hardy & Bacon, Kansas City, MO, for Defendants.

### RULING ON DEFENDANTS' MOTION FOR ORDER OF PARTIAL DISMISSAL [DOC. # 232]

ARTERTON, District Judge.

This tobacco products liability case is brought pursuant to the Court's diversity jurisdiction by plaintiff Mark Gerrity, the son and executor of the estate of Judith S. Gerrity. The Third Amended Complaint [Doc. # 235] alleges claims under the consolidated Connecticut Products Liability Act, Conn. Gen.Stat. § 52–572m *et seq.* Defendants R.J. Reynolds Tobacco Co. and Lorillard Tobacco Co. have moved for dismissal of several legal theories in the complaint, including breach of express warranty, breach of implied warranty, improper marketing and promotion, and failure-to-warn. *See* Mot. to Dismiss [Doc. # 232]. For the reasons that follow, defendants' motion will be denied.

### I. FACTUAL BACKGROUND

The Third Amended Complaint, filed March 21, 2005, alleges the following facts. Judith Gerrity began smoking in the mid–1950s when she was approximately 13 or 14 years old, "and continuing for decades

thereafter." Between the 1950s and approximately 1980, she smoked Old Gold cigarettes manufactured, distributed and marked by defendant Lorillard. From 1980 into the 1990s, she smoked Winston cigarettes, and between about 1994 and 1996 she smoked Salem cigarettes, both of which were manufactured and distributed by defendant Reynolds. Third Am. Compl. ¶ 5.

The complaint alleges that "Judith Gerrity became addicted to nicotine and was unable to stop smoking. As a result of her smoking cigarettes manufactured and distributed by defendants, Judith S. Gerrity developed lung cancer, which metastasized throughout her body. Judith Gerrity died on October 18, 1996, at the age of 54, as a result of the lung cancer she developed and the medical complications thereof." Id. at ¶¶ 8–10.

The complaint alleges various liability theories under Connecticut's products liability law, Conn. Gen.Stat. § 52–572m, including strict liability, improper manufacture and design, failure to warn,[1] breach of implied warranty, breach of express warranty, and improper marketing and promotion.

In support of the improper marketing and promotion claim, Gerrity alleges that Lorillard and Reynolds, "acting in concert with other United States and international cigarette manufacturers (and their agents), entered into a wrongful scheme and engaged in a wrongful course of conduct... to persuade the American consuming public that there was a bona fide scientific controversy concerning whether or not cigarette smoking is harmful to smokers' health, including whether or not smoking

causes lung cancer, and whether or not the nicotine in cigarettes is addictive when, in fact, it knew that no such scientific controversy truly existed." Id. at ¶ 43. The complaint cites a 1972 memorandum from The Tobacco Institute laying out a strategy of persuading the public to "believe in evidence to sustain their opinions that smoking may not be the causal factor." Id. at ¶ 46. Additional allegedly false statements issued by The Tobacco Institute are detailed in Exhibit A of the complaint. In essence, the allegation is that the Institute and its successor, the Council for Tobacco Research, represented that it would undertake objective research into the health effects of smoking, and accurately inform the public of the results of its research, "when, in fact, although it well knew of the health hazards (including the addictive nature of... cigarettes), it did not intend to so disclose them and did not, prior to June 30, 1969, disclose them." See id. at ¶¶ 48–49. Plaintiff further alleges that defendants were aware that cigarettes were addictive but failed to warn consumers of this fact or the fact that cigarettes could cause lung cancer and other diseases. Id. at ¶¶ 51–53. In addition, it is alleged that defendants represented that they would remove any cigarette components found to be harmful, and that they did not manipulate the nicotine content of cigarettes, both of which representations were false. Id. at ¶¶ 54–55. The complaint alleges that defendants, with other tobacco companies, participated in a wrongful agreement to limit research into the health hazards of smoking and prevent changes to the design of cigarettes that would make them less harmful or addictive. Id. ¶¶ 61–62. Finally, the complaint

---

1. In light of the Federal Cigarette Labeling Act, which precludes lawsuits based on any state "requirement or prohibition based on smoking and health... with respect to the *advertising or promotion* of any cigarettes the packages of which are labeled in conformity" with the law, 15 U.S.C. § 1331 *et seq.* (emphasis supplied), plaintiff has excluded from his failure-to-warn claims any failure "occurring in advertising or promotion." Pl. Mem. in Opp. [Doc. # 250] at 30. *See also infra* § III.D,

alleges that defendants deliberately marketed cigarettes to minors "to influence the perception of minors that it was safe to smoke" and to get minors addicted so as to increase the cigarette market, but that defendants have falsely denied these actions. *Id.* at ¶¶ 64, 67.

## II. STANDARD

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991). To survive the motion, the plaintiff must set forth " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed. R.Civ.P. 8(a)(2)); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 (footnote omitted), *see also Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. DISCUSSION

### A. Breach of Express Warranty

■ Defendants move to dismiss plaintiff's breach of express warranty claim on the grounds that plaintiff has failed to allege that decedent relied on any of defendants' statements. Defendants argue that reliance is an element of an express warranty claim, and the allegation that "Judith Gerrity was aware of defendant Reynolds' massive publicity campaign to warranty the safety of its products," *see* Third Am. Compl., ¶ 41, is insufficient to allege reliance. In response, "Plaintiff recognizes that *evidence* of reliance has been held to be necessary to *prove* that an express warranty exists," but that "[t]hese *evidentiary* issues are, however, not before the Court on a motion to dismiss for failure to state a claim." Pl. Mem. in Opp. [Doc. # 250] at 3 (emphases in original).

■ "The elements for a claim for breach of warranty are: (1) existence of the warranty; (2) breach of the warranty; and, (3) damages proximately caused by the breach. Any affirmation of fact or promise made by the seller of goods to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Omega Eng'g, Inc. v. Eastman Kodak Co.,* 30 F.Supp.2d 226, 246 (D.Conn. 1998) (citations omitted).

■ While plaintiff must prove that defendant's statements formed "the basis of the bargain," this is a factual issue that requires development. None of the cases cited by defendants dismissed an express warranty claim under Fed.R.Civ.P. 12(b)(6).[2] Under federal notice pleading

2. *See Jeter v. Brown & Williamson Tobacco Corp.,* 113 Fed.Appx. 465, 468, 2004 WL 2402815, *3 (3d Cir.2004) (unpublished) (affirming grant of summary judgment to defendants where plaintiff in deposition testimony "did not recall the specifics of any tobacco advertisements" and thus failed to prove that he relied on any such advertisements), *Danise,* 17 F.Supp.2d at 97 (bench trial decision

requirements, a plaintiff need only set forth "a short and plain statement" that gives the defendant notice of the claim. Fed.R.Civ.P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). There is no requirement that to survive a Rule 12(b)(6) motion to dismiss a plaintiff must allege in his/her complaint each specific element of the claim, so long as the elements may reasonably be inferred from the allegations in the complaint.

Plaintiff in this case alleges in the fifth claim of the complaint that Reynolds warranted that the cigarettes smoked by the Judith Gerrity "were safe for their normal and expected use by users, that if defendant Reynolds discovered that such cigarettes were hazardous to health, it would so advise the consuming public, and that if any components found in its cigarettes were determined to cause or contribute to disease, it would remove such components." Third Am. Compl. ¶ 35. Plaintiff further alleges that Reynolds "knew that its product contained toxic, cancer-causing ingredients" but did not so inform the public or remove these ingredients, and that Judith Gerrity was unaware at the time she began smoking in the mid–1950s that "cigarettes were hazardous to health." *Id.* at ¶¶ 36–38. Plaintiff alleges that "Reynolds' warranties and representations were intended by defendant Reynolds to induce consumers to smoke and continue to smoke," and its "warranties and representations were directed to the American consuming public, including Judith Gerrity," who "was aware of defendant Reynolds' massive publicity campaign to warrant the safety of its products." *Id.* at ¶¶ 39–41. These allegations are sufficient to apprise defendants of plaintiff's allegation that Judith Gerrity purchased and smoked defendants' cigarettes in reliance on defendants' publicity allegedly warranting the safety of their cigarettes.

Plaintiff therefore has adequately alleged that defendants' promises formed "the basis of the bargain" under which Judith Gerrity purchased and used the cigarettes at issue. Count five of the complaint is sufficient to state a claim under Rule 8, and therefore defendants' motion to dismiss for failure to explicitly plead reliance will be denied.

## B. U.C.C. Notice

■ Defendants also move to dismiss the breach of express and implied warranty claims on the grounds that plaintiff failed to give defendants notice of those claims prior to filing suit. Under Conn. Gen.Stat. § 42a–2–607(3)(a), "Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy. . . ." A buyer is defined as "a person who buys or contracts to buy goods," and a " 'Seller' means a person who sells or contracts to sell goods." Conn. Gen.Stat. § 42a–2–103(1)(a), (c).

Plaintiff argues that this provision is inapplicable because Judith Gerrity and

---

in non-cigarette case), *Omega Engineering, Inc. v. Eastman Kodak Co.*, 30 F.Supp.2d 226, 246 (D.Conn.1998) (bench trial ruling in non-cigarette case), *Criteria II, Ltd. v. Co–Opportunity Precision Wood Products, Inc.*, No. CV 803309S, 2001 WL 1178333, at *1 (Conn.Super. Aug. 30, 2001) (granting motion to strike under Connecticut's fact pleading standards), *Dondero v. Kasheta*, No. CV 950549882, 1997 WL 120342 at *3 (Conn.Super. Feb. 28, 1997) (decision of three-judge panel after bench trial in non-cigarette case), *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436–37 (Tex. 1997) (granting summary judgment where plaintiff did not testify at deposition to any specific advertising on which he relied, but rather testified that he began smoking because his friends smoked).

the defendants were not in the position of "buyer" and "seller," and were not in contractual privity. Additionally, plaintiff argues that this U.C.C. provision does not apply to personal injury tort claims.

Although the Connecticut Supreme Court has not addressed this issue, Connecticut lower courts have concluded uniformly that § 2–607(3)(a) does not require a product purchaser to timely notify a manufacturer of a products liability claim in a personal injury case. For example, *Ruderman v. Warner–Lambert Pharmaceutical Co.*, 23 Conn.Supp. 416, 184 A.2d 63 (1962), held that a buyer injured by a hair care product was not required to give notice to the manufacturer before filing a tort suit: " 'This is not an action by a *buyer* against a *seller*. It is an action by a consumer against the manufacturer... for breach of implied warranty of the wholesomeness of its product, which product was purchased by the consumer from a retailer. [The notice statute] does not apply.' " *Id.* at 419, 184 A.2d 63 (quoting *La Hue v. Coca–Cola Bottling Inc.*, 50 Wash.2d 645, 314 P.2d 421 (1957) (emphasis in original)). In *Tomczuk v. Town of Cheshire*, 26 Conn.Supp. 219, 217 A.2d 71 (Conn.Super.1965) held that a child injured on a bicycle while she was the guest of the bicycle's owners was not required to provide notice of her claim to the bicycle manufacturer. "It cannot be said that a 'sale' was made by Union Cycle [the manufacturer] to the [family]. It is not disputed that the bicycle was sold by Union Cycle to [a retail store]. Thus, title passed from the former as seller to the latter as buyer, and when [the store] sold it to the [family], once again title was passed by [the store] as the seller to the [family] as the buyer." *Id.* at 222, 217 A.2d 71.

In *Recalde v. Werner & Pfleiderer*, No. CV 950049663S, 1997 WL 200753 (Conn.Super. April 14, 1997), the court held that an employee injured by a machine manufactured by the defendant was not barred from filing suit for failure to give notice of a claim because the employee was not a "buyer" of the machine. The court noted that "it would make no sense under the [U.C.C.] to apply the notice provisions to a party in the plaintiff's position:... 'The purpose of requiring notice of enabling the seller to cure the defect has significance in a commercial setting but has no significance in a personal injury case because the defect has already caused the harm and the seller can do nothing to remedy the situation that has already occurred.' " *Id.* at *2 (quoting Anderson, *Uniform Commercial Code*, § 2–607:24).

The Connecticut cases cited by defendants for the proposition that the notice provision should apply to the plaintiff in this case are distinguishable because they are cases claiming economic harm, not personal injury. *See Zeigler v. Sony Corp. of Am.*, 48 Conn.Supp. 397, 849 A.2d 19 (Conn.Super.2004) (notice of breach of implied warranty claim required before purchaser of allegedly defective DVD player could sustain class action against manufacturers); *Travelers Prop. & Cas. Ins. Corp. v. Yankee Gas Servs. Co.*, No. CV9900266606S, 2000 WL 775558 (Conn.Super. May 19, 2000) (insurer required to give notice to utility company before bringing claim that defective gas damaged insured's home).

The Court has found no Connecticut Superior Court holding that § 42a–2–607(3)(a) applies in personal injury cases where there is no direct buyer-seller relationship between the parties, which fully comports with the UCC language limiting notice to cases between "buyers" and "sellers." In this case, it is undisputed that the defendant cigarette manufacturers did not sell or contract to sell their products directly to Judith Gerrity, and thus no buyer-seller relationship existed. Based

on the uniformity of result in the Connecticut Superior Court decisions addressing the issue, as well as the absence of any purpose of notice by a smoker who has already contracted lung cancer, the Court concludes that the Connecticut Supreme Court would hold that a consumer like Judith Gerrity need not give notice of an alleged breach of warranty to a manufacturer before bringing a products liability lawsuit to recover for personal injuries. For this reason defendants' motion to dismiss the breach of warranty claims for lack of the U.C.C. notice will be denied.

### C. Improper Marketing and Promotion Claim

█ Defendants also move to dismiss plaintiff's marketing and promotion claim on the grounds that plaintiff has not adequately pleaded that Judith Gerrity relied on any particular alleged misrepresentation by defendants when beginning or continuing to smoke defendants' cigarettes. Defendants characterize the Third Amended Complaint as merely alleging a "fraud on the market" theory and not a claim of individual reliance by the decedent.

█ The parties agree that plaintiff's improper marketing and promotion claim essentially is a fraudulent misrepresentation claim. They also agree that the "elements of a cause of action for fraud and fraudulent misrepresentation in Connecticut are (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the other party did so act on it to his injury." *Kilduff v. Adams, Inc.*, 219 Conn. 314, 329, 593 A.2d 478, 486 (1991) (internal citations, quotations and footnote omitted). By acknowledging these elements, it is evident that plaintiff is not advancing a "fraud on the market" theory. The theory of "fraud on the market," a creature of federal securities laws, entitles a plaintiff to "a rebuttable presumption of reliance based on the notion that 'in an open and developed securities market, the price of a company's stock is determined by the available material information.' Consequently, '[m]isleading statements will... defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.'" *SIPC v. BDO Seidman*, 222 F.3d 63, 72 n. 5 (2d Cir.2000) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 241, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). Such a doctrine would be incompatible with proof of individual reliance, which plaintiff acknowledges is his burden in this product liability case. Pl. Mem. in Opp. at 21–24.

Paragraphs 68 and 69 of the Third Amended Complaint allege against both defendants:

> Defendant[s'] deceptive representations and actions as aforesaid were material, false [and] likely to and did cause consumers, including minors under the age of 16, including Judith Gerrity, to begin and/or continue to smoke, to cause consumers, including Judith Gerrity, to become addicted to cigarettes, and to mislead consumers, including Judith Gerrity, about the adverse health consequences of tobacco products['] use and the addictive nature of nicotine.

> Judith Gerrity was injured as a result of defendant[s'] wrongful scheme in that she was induced to begin and to continue purchasing defendant['s] cigarettes, to become addicted to cigarettes and to continue smoking as an addicted smoker by virtue of defendant[s'] illegal youth targeting, misrepresentations about the health hazards and addictive nature of its cigarettes, manipulation of the nicotine in its cigarettes and other conduct set forth in this Complaint.

Third Am. Compl. ¶¶ 68–69. Even though not expressly pleaded, the reliance element is reasonably inferred from plaintiff's allegations that Judith Gerrity was caused and induced to begin and continue purchasing and smoking defendants' cigarettes as a result of deceptive representations.[3]

Furthermore, as plaintiff argues, reliance is a factual issue. *Maturo v. Gerard*, 196 Conn. 584, 587, 494 A.2d 1199, 1201 (Conn.1985) ("Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact.") (quoting *Hathaway v. Bornmann*, 137 Conn. 322, 324, 77 A.2d 91, 93 (Conn. 1950)). Determination of the sufficiency of plaintiff's evidence that Ms. Gerrity relied on defendants' statements therefore must await development of the record for summary judgment or trial.

### D. Preemption by Federal Labeling Act

 Finally, defendants move to dismiss all of plaintiff's claims after July 1, 1969, "to the extent they attack the sufficiency of the federally-mandated warnings." Def. Mem. of Law at 13. The federal cigarette labeling statute, 15 U.S.C. § 1331 *et seq.*, as amended by the Comprehensive Smoking Education Act of 1984, Pub.L. 98–474, 98 Stat. 220, prescribes particular warnings that must be placed on cigarette packages and advertisements. As stated by Congress, the purpose of the statute is:

> . . . to establish a comprehensive Federal program to deal with. cigarette labeling and advertising with respect to any rela-

tionship between smoking and health, whereby—

(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

*Id.* at § 1331. The Labeling Act contains an express preemption provision, which is the subject of defendants' motion: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b).

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 523–24, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), a plurality of the Supreme Court wrote that the "central inquiry in each [preemption] case is straightforward: we ask whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,' giving that clause a fair but narrow read-

---

**3.** None of the cases cited by defendants in support of their motion dismissed a direct reliance claim on a Rule 12(b)(6) motion. *See Brown v. Philip Morris, Inc.*, 228 F.Supp.2d 506, 518 (D.N.J.2002) (granting summary judgment); *Weiffenbach v. Philip Morris Inc.*, No. 96–1690–CIV–T–24(b) (M.D. Fla. June 20, 1997) (Def.Ex. L) (dismissing only "indirect" fraud-on-the-market claim as legally insuffi-

cient but not direct reliance claim); *Liggett Group, Inc. v. Engle*, 853 So.2d 434 (Fla. 3rd DCA 2003), *review granted*, 873 So.2d 1222 (Fla.2004) (motion for class certification); *Major v. R.J. Reynolds Tobacco Co.*, No. BC–243339 (Sup.Ct., Los Angeles Cty., Ca., Jan. 6, 2004) (Def.Ex. M) (granting summary judgment).

ing.... [E]ach phrase within that clause limits the universe of common-law claims pre-empted by the statute." *Cipollone* held that the plaintiff's failure-to-warn claim was preempted to the extent that the theory required "a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings," but that "claims that rely solely on respondents' testing or research practices or other actions unrelated to advertising or promotion" were not preempted. *Id.* at 524, 112 S.Ct. 2608. The Supreme Court further held a claim for breach of express warranty was not preempted, even if "the terms of the warranty may have been set forth in advertisements," because in that situation the warranty itself, rather than state law, imposes the obligation on the manufacturer. *Id.* at 526–27, 112 S.Ct. 2608. Additionally, *Cipollone* held that claims asserting intentional fraud and misrepresentation, including fraudulent concealment of material facts, and conspiracy to commit fraud, were not preempted because they are "predicated not on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive," and the "duty not to conspire to commit fraud." *Id.* at 528–30, 112 S.Ct. 2608. The only theory of fraudulent misrepresentation that was held to be preempted was a claim that the tobacco companies, "through their advertising, neutralized the effect of federally mandated warning labels," because such a claim was predicated on a "state-law *requirement* that warnings be included in advertising and promotional materials." *Id.* at 527, 112 S.Ct. 2608.

Plaintiff Gerrity's improper marketing and promotion claim is based on three theories: (1) defendants, individually and in conspiracy with other tobacco companies and related entities, attempted to persuade American consumers that there was an "open question" concerning the health hazards of smoking, which was false as a matter of scientific research, and they falsely represented that the companies would investigate and disclose any health hazards of cigarettes, when they did not intend to disclose the risks, nor did they actually disclose them; and (2) defendants falsely represented that they did not target minors under age 16 in their advertising and promotion for cigarettes, when in fact their advertising did target minors; and (3) defendants falsely represented that they did not manipulate the nicotine content of their cigarettes, when in fact they did alter cigarette nicotine levels in order to make their products more addictive.

These claims are based on theories of fraudulent misrepresentation and concealment, and conspiracy to commit fraud. As such, they are not preempted by the federal cigarette labeling act. *Cipollone,* 505 U.S. at 528, 112 S.Ct. 2608; *see also Izzarelli v. R.J. Reynolds Tobacco Co.,* 117 F.Supp.2d 167, 175 (D.Conn.2000) (holding claims of deliberate promulgation of scientifically false "open questions" about the health effects of smoking, and false statements claiming defendant did not market to minors or manipulate nicotine content in cigarettes, were not preempted by labeling act.)

Defendants focus on two paragraphs of plaintiff's complaint:

52. As part of its participation in said wrongful scheme, at no time prior to June 1996 did defendant Reynolds warn consumers that such cigarettes could cause lung cancer and other disease in smokers.

53. As part of its participation in said wrongful scheme, at no time prior to June 1996 did defendant Reynolds warn consumers of its cigarettes that such consumers could become addicted to its product.

Third Am. Compl. ¶¶ 52–53. Defendants argue that these allegations show that

plaintiff is really asserting failure-to-warn claims related to smoking and health that are expressly preempted by the labeling act, but concealing his actual claims under the guise of fraud claims. Def. Mem. of Law [Doc. # 233] at 17 *et seq.* While standing alone they appear to do so, read in context, these paragraphs form part of plaintiff's assertion that defendants falsely represented that they would research and disclose any health hazards posed by cigarettes, but, contrary to their representations, they did not disclose—*i.e.,* warn the public about—any such health hazards. *See* Third Am. Compl. ¶ 49. This seems to be precisely the type of fraudulent misrepresentation claim that *Cipollone* held not preempted, because it is based on a state policy to prevent fraud and conspiracy to commit fraud, not on a state policy regarding smoking and health.

Defendants agree that plaintiff's affirmative misrepresentation claims are not preempted, but "maintain that Plaintiff's claims are pre-empted *to the extent* Plaintiff has asserted post-July 1, 1969 fraudulent neutralization and concealment within his Improper Marketing and Promotion Claims and *to the extent* Plaintiff otherwise challenges Defendants' post-July 1, 1969 advertising practices." Def. Reply Br. [Doc. # 256] at 7 (emphases in original). Plaintiffs do not allege any such claims, however, presumably recognizing that they would not be viable.

The Court does not read *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001), as defendant does, *i.e.,* for the proposition that the Supreme Court has expanded the universe of advertising and promotion claims "based on smoking and health" to include fraudulent advertising. *Reilly,* 533 U.S. at 551, 121 S.Ct. 2404, related to a Massachusetts law governing placement of cigarette billboards and other advertisements, which was motivated by the state's concern about the relationship between smoking and

health, and thus was held to be preempted by the labeling act. *Reilly* did not alter *Cipollone's* holding that common law tort actions based on state policies *not* motivated by health concerns, but rather by a public policy to protect consumers from fraud, remained a source of redress for plaintiffs notwithstanding the 1969 Labeling Act. Plaintiff's allegations of fraudulent misrepresentation and conspiracy to commit fraud on American cigarette consumers therefore are not preempted.

## IV. CONCLUSION

Accordingly, defendants' motion for partial dismissal will be DENIED.

IT IS SO ORDERED.